# OPINION OF COUNTY COUNSEL AT REQUEST

# OF COUNTY CIVIL SERVICE COMMISSIONERS

## LOS ANGELES COUNTY

### ( Political Activities — Civil Service )

#### June 4th, 1924.

1. COUNTIES — CIVIL SERVICE — OFFICERS ACTIVITY IN POLITICS.

A campaign by the Chief Deputy Treasurer of Los Angeles County for the office of County Supervisor is a violation of Charter, Art. IX, Sec. 43, prohibiting persons in classified civil service from taking part in political campaigns further than to vote and express opinions privately.

2. COUNTIES — CIVIL SERVICE — OFFICER CANNOT CAMPAIGN FOR SELF.

Charter Art. IX, Sec. 43 prohibiting persons in classified civil service from participating in political campaigns further than voting and expressing opinions privately does not permit such persons to campaign for themselves.

3. WORDS AND PHRASES — "TAKING PART IN POLITICAL CAMPAIGNS".

An endeavor to elect any one, including one's self, to public office is a "taking part in a political campaign," in view of Webster's definition that a political campaign is an organized series of operations or a systematic effort to influence voters, etc., carried on before an election.

4. STATUTES, CONSTRUCTION — EXPRESSED INTENTION.

The rule that statutes are to be construed harmoniously whenever possible, when applied to a contention that a general code section and a particular charter section are in conflict does not require an interpretation at variance with the law makers' plainly expressed intention.

5. COUNTIES. CIVIL SERVICE — POLITICS—CHARTER NOT IN CONFLICT WITH STATUTES.

Political Code Section 58 providing that "Every elector is eligible to office for which he is an elector, except where otherwise specially provided, etc.," does not, in view of the exception, conflict with Charter Art. IX, Sec. 43, prohibiting persons in the classified civil service from political activities

other than voting and privately expressing an opinion.

6. COUNTIES — CIVIL SERVICE — POLITICAL ACTIVI-
TIES — DISQUALIFICATION.

Charter Art. IX, Sec. 43 merely tells persons in classified
civil service not to campaign while continuing in office and
does not disqualify for holding office and so does not conflict
with Pol. Code, Sec. 58 making electors eligible to offices for
which they are electors.

7. CONSTITUTIONAL LAW — FREE SPEECH — CIVIL
SERVICE — OFFICERS FORBIDDEN TO CAMPAIGN.

Charter Art. IX, Sec. 43 prohibiting persons in classified
civil service from political activities other than voting and
privately expressing opinion is a proper disciplinary measure
and does not conflict with Const. Art. 1, Sec. 9, providing that
"Every citizen may freely speak, write and publish his senti-
ments on all subjects    *    *    *    *    and no law shall be
passed to restrain or abridge the liberty of speech or of the
press".

8. CONSTITUTIONAL LAW.  CIVIL SERVICE—POLITICS
—CAMPAIGNING FOR SELF.

Charter Art. IX, Sec. 43 prohibiting persons in classified
civil service from political activities other than voting and ex-
pressing opinions privately is not unconstitutional for not
making an exception or distinction where such person cam-
paigns for himself.

———

**Edward T. Bishop,  County Counsel.**

———

Hon. County Civil Service Commission.

Hall of Records,    Los Angeles, Calif.

Gentlemen:    Under date of the 16th inst. you re-
quested us to advise you whether or not a campaign
by the chief deputy treasurer of this county for the
office of county supervisor would be a violation of the
charter provision respecting political activity.    It is
our opinion that it would.

The charter provision involved in the question is Section 43, of Article IX, dealing with civil service, reading as follows:

"No person holding a position in the classified service shall take any part in political management or affairs or in political campaigns further than to cast his vote and to express privately his opinion."

We will consider three contentions which have been made with respect to the effect of this section. First, that it was not meant to and does not apply to campaigns conducted for oneself. Second, that in order to construe it harmoniously with Section 58 of the political code it must not be held to restrict campaigns for oneself. Third, that it is unconstitutional as limiting free speech. A further contention as to its constitutionality need not be considered here because it does not affect the policy of the rule.

We believe that the language of the section under discussion does not permit of an interpretation which will omit from its provisions campaigns for oneself while applying to campaigns for someone else or for or against some measure. Webster defines campaign as follows:

"5. A connected series of operations to bring about some desired result—: esp., Politics, an organized series of operations or a systematic effort to influence voters, etc., carried on before an election."

There may be reasons why a civil service employe should not be permitted to campaign to secure a majority of the votes for John Jones but should be permitted to secure votes for himself; or why he should not be permitted to attempt to elect a candidate on the Democratic ticket but should be permitted to work for who aspires to a non-partisan office; but with such reasons we are not concerned. We are dealing with a phohibition against "taking part in political campaigns". Uuless a restricted and unusual meaning is to be given to the expression just quoted, then it includes an attempt to persuade the voters to elect

John Jones to an office for which political parties as such have candidates, and as well as those for which they do not. And if an endeavor to elect John Jones as congressman or as county assessor is a political campaign, then John Jones' activity on his own behalf is taking part in a political campaign. (So far no one has suggested that a distinction is to be made between taking "part" and taking "all".)

That the charter framers believed that they had covered all sorts of political activity may be deduced, it seems to us, from the exceptions they found it necessary to express: "further than to cast his vote and to express privately his opinions".

We cannot believe that a further exception from the general language used was intended.

This leads us to the contention that this section of the charter should not be construed as applying to political campaigns conducted for oneself, for to so construe it would result in its being in conflict with Section 58 of the Political Code. which reads:

"58. Eligibility to Office. Every elector is eligible to office for which he is an elector, except where otherwise specially provided; and no person is eligible who is not such an elector, except when otherwise specially provided."

Three answers to this contention suggest themselves. First, admitting for the sake of argument that the rule that statutes are to be construed harmoniously whenever possible is applicable here where it is claimed a general code section and a particuler charter section are in conflict, nevertheless that rule is only one of statutory construction and never requires an interpretation at variance with the plainly expressed intention of the law makers. As we have already said, that intention we do not believe to be to permit personal campaigns.

The second answer to the contention noted is that any possible conflict between the charter limitations

on political activity and the code's statement of one's right to be a candidate for an office, is removed by the words contained in the code section itself: "except when otherwise specially provided."

The real weakness of the contention, however, lies in the assertion or assumption that there is a conflict between Section 43 of the charter and Section 58 of the political code.    The latter is a general declaration with respect to the eligibility for office of electors. The former is a provision respecting the activity of those holding positions in the county service.    Section 43 does not pretend to deal with the question of eligibility to office.    A person who is holding the position of chief deputy treasurer in not thereby rendered inelgible for the position of county supervisor, give to Section 43 its fullest possible scope.    He is, however, told not to make a campaign for the office while he continues as a county employee.

That this is not a distinction without a difference we will more clearly see in considering the further point suggested that Section 43 of the charter is invalid because in conflict with the constitutional provision (Article I, Section 9), that:

"Every citizen may freely speak, write and publish his sentiments on all subjects    ......    ......    ......    and no law shall be passed to restrain or abridge the liberty of speech or of the press."

Supporting the claim of unconstitutionality we have the case of Louthan vs. Commonwealth, (1884) 79 Va., 196.    This case considered a statute entitled "An act to prohibit the active participation in politics of certain officers of the state government,"    wherein it was declared to be a misdemeanor to make political speeches.    The constitutional right to free speech was held to be violated by the act, and it was held, therefore, to be invalid.    Richmond vs. Lynch, (1907) 106 Va. 324 follows the earlier decision, declaring an ordinance attempting to prohibit an officer from holding a position on a standing committee of a political

party to be void because the qualifications of such officer were fixed by the constitution and could not be added to by city ordinance.

These Virginia cases seem to stand alone, however, and the strong dissenting opinion written in the first case seems to represent more nearly the great weight of authority.    One of the leading cases was unconstitutional in that it unjustly limited freedom of contract —that is limited an attorney in the choice of his clients:    The court held:

"To hold office is no right; it is a privilege conferred by the law making power, involving no element of contract, and to be employed on terms resting entirely within the legislative discretion." Boone v. State, (1911) 170 Ala., 57; 54 So. 109; Ana. Cas. 1912C. 1065.

The court then went on to point out that, as attorneys, there was no limitation on their choice of employments, but that as office holders there was such a limitation incidental to the office.

In New York a writ of certiorari was sought to compel the reinstatement of a fire commissioner who had been dismissed because he violated a provision of the charter of Greater New York, which prohibited any member of the uniform force from belonging to any club intended to affect legislation on behalf of the fire department.    It appeared from the evidence that the relator and others met from time to time as a body of "American citizens," and as such discussed plans looking to legislation in the interest of the fire department.

"It is said, however, that, unless the acts of the relator in this respect be upheld, then his rights as a citizen are abridged, and, therefore, the act and the rule are in violation of the State Constitution (Art. 1, sec. 1, 8).    There is no foundation for the claim either in law or reason.    Neither the fire department, acting through its officers, nor the legislature of the

State has in the slightest degree abridged the rights of the relator in any respect.   *   *   *   The right of the relator to freely petition with others, to exercise the right of free speech, to write for publication, is as perfect at the present moment as it ever was, but for the purpose of discipline, absolutely necessary for the maintenance of the fire department as an efficient corps he may not do such things in connection with such department while he is a member of it, either openly as a fireman or under the guise of an American citizen.   By becoming a member of the force he at the same time becomes subject to discipline according to its rules, and those rules he must obey or be the subject of dismissal. He may not then freely write, speak or publish, if thereby the law and the rules be violated.  It is to them that he owes obedience, and if he be not willing to yield it, his right is as free and untrammeled as it ever was to emancipate himself from the shackles of the department and exercise his right as an American citizen, whether it violate the rules of the department or not.   It is therefore, erroneous to say that his right of citizenship is abridged in any particular, and the courts have so held." (People Ex Rel. Clifford v. Scannell.   (1902) 74 A. D. (406: 77 N. Y. S. 704.)

The rule established by these cases we submit, is founded on the better reasoning that is, to apply it here, that the charter provision is not a violation of the constitutional right of a citizen to free speech, any more than would a provision that each employee of the classified service should work eight hours a day be a violation of the right of each citizen to work—or not work—as he pleases, but is instead a reasonable restriction on the conduct of one who holds a public position.

The principle enunciated by these cases with respect to the constitutional right freely to speak one's opinions is applicable, we submit, to whatever right is given an elector to run for office by Section 58.   This is intimated in Brownell v. Russell, (1904) 76 Vt. 326;

57 Atl. 103, wherein the argument was considered that a rule that no member of the police force could be a delegate to a political convention was in contravention of a constitutional provision that all free men have a right to be elected into office.    The court said:

"If the scope of the provision were held to be as claimed, it is possible that the acceptance of an appointment, with this rule in force, would be a waiver of the constitutional right."

We cannot but conclude, therefore, that the provisions of Section 43 of the charter make no distinction between political campaigns conducted for oneself and those conducted for others; and that the section is not invalid nor unconstitutional because it fails to make such a distinction.

Very truly yours,

Edward T. Bishop,

County Counsel.